## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**NATHAN M. THOMPSON and**
**DENISE D. THOMPSON, Debtors**                              **CASE NO. 17-51113-KMS**
                                                                                                                   **Chapter 7**

**KIMBERLY R. LENTZ, as Chapter 7 Trustee for The Bankruptcy Estate of**
**Nathan M. Thompson and Denise D. Thompson, Debtors**                     **PLAINTIFF**

**V.**                                                                                                   **Adv. Pro. No. _____**

**GLOBAL CLIENT SOLUTIONS, LLC; GLOBAL HOLDINGS, LLC;**
**THE LAW OFFICES OF ROBERT S. GITMEID & ASSOCIATES, PLLC;**
**ROBERT S. GITMEID; NATIONAL DEBT RELIEF LLC; and**
**RICHARD BOEHMS**                                                                      **DEFENDANTS**

## AMENDED COMPLAINT

COMES NOW Plaintiff, Kimberly R. Lentz, Chapter 7 Trustee for the Bankruptcy Estate of Nathan M. Thompson and Denise D. Thompson, (hereinafter the "Trustee") by and through her attorney and files this amended complaint, individually and collectively against Defendants, Global Client Solutions, LLC ("Global"); Global Holdings LLC ("Global Holdings"), the Law Offices of Robert S. Gitmeid & Associates, PLLC, ("Robert S. Gitmeid & Associates"), Robert S. Gitmeid, individually, National Debt Relief LLC ("National Debt Relief"), and Richard Boehms collectively hereinafter referred to as ("Defendants") and in support thereof would respectfully show unto the Court the following:

## JURISDICTION & VENUE

1.  Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United States Code in that this proceeding arises in and is related to the above-captioned Chapter 7 case under Title 11 and concerns property of the Debtors in that case.

2.  This Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 U.S.C. §1334, 28 U.S.C. §157(b)(2), and pursuant to the Order entered by the Judges of the United States District Court for the Southern District of Mississippi on July 23, 1984 (the Referral Order), which Order was entered in accordance with the Bankruptcy Amendments and Federal Judgeship Act of 1984.

3.  Pursuant to the Uniform Local Rules for the United States Bankruptcy Courts for the Northern and Southern Districts of Mississippi, Rule 7008-1, as amended December 1, 2016, the Plaintiff consents to the entry of a final order by the Bankruptcy Court.

4.  Venue lies in this District pursuant to 28 U.S.C. §1391(b) and 28 U.S.C. §1409(a).

## PARTIES

5.  The Trustee or Plaintiff is the Chapter 7 Trustee for the above-styled and numbered Chapter 7 proceeding and Estate.

6.  The Debtors, Nathan and Denise Thompson, (hereinafter "The Thompsons" or "Debtors") are Debtors under the above-styled and numbered Chapter 7 proceeding and are "Assisted Persons" as that term is defined by 11 U.S.C. §101(3) as their debts are primarily consumer debts and the total value of their nonexempt property is less than $192,450.00.

7.  Global Client Solutions, LLC ("Global"), is a limited liability company organized under the laws of Oklahoma and is wholly-owned by Global Holdings, LLC.  Although Global does business in every state of the United States, it is not, however, registered to conduct business in the State of Mississippi.  Global offers and provides account maintenance and payment-processing services to debt management service providers ("DMSPs") and consumers.  Global has an established pattern and practice of violating debt management statutes in other states. *Carlsen v. Global Client Solutions, LLC*, 256 P.3d 322 (Wash.

2

2011) (finding Global to have to have taken "possession and delivery of funds by accepting them into a custodial account").  Service of process can be effected on Global by way of service upon its registered agent, Brent Hampton, at 4500 S. 129th East Avenue, Suite 175, Tulsa, Oklahoma 74134.

8.   Global Holdings, LLC, is a limited liability company organized under the laws of Oklahoma and— through its subsidiary, agent, or alter-ego, Global —does business in every state of the United States; however, Global Holdings, LLC is not registered to conduct business in the State of Mississippi.  Global Holdings, LLC, as the parent company, is a controlling shareholder of Global.  Service of process can be effected on Global Holdings, LLC, by way of service upon its registered agent, Brent Hampton, at 4500 S. 129th East Avenue, Suite 175, Tulsa, Oklahoma 74134.

9.   The Law Offices of Robert S. Gitmeid & Associates, PLLC, ("Robert S. Gitmeid & Associates") is a professional service limited liability company organized under the laws of New York.  Although not registered to conduct business in the State of Mississippi, Robert S. Gitmeid & Associates claims to be a law firm providing legal services and debt management services to Mississippians.  Robert S. Gitmeid & Associates is one of several DMSPs that Global partners with to provide debt management services to Mississippians.  Robert S. Gitmeid & Associates' principal place of business is 2081 East 8th Street, Brooklyn, New York 11223.  Robert S. Gitmeid & Associates may be served upon its registered agent for service of process at 11 Broadway, Suite 1677, New York, New York 10004, or upon Robert S. Gitmeid at 2081 East 8th Street, Brooklyn, New York 11223.

10.   Robert S. Gitmeid is the managing attorney at Robert S. Gitmeid & Associates.  Robert S. Gitmeid has managerial responsibility for Robert S. Gitmeid & Associates and materially

participates in the conduct of its affairs.  However, Robert S. Gitmeid is not licensed to practice law in the State of Mississippi.  Robert S. Gitmeid may be served at 2081 East 8th Street, Brooklyn, New York 11223.

11.  National Debt Relief LLC ("National Debt Relief") is a limited liability company organized under the laws of New York and located at 11 Broadway 16th Floor New York, NY 10004.  National Debt Relief conducts business in Mississippi but is not registered to conduct business in the State of Mississippi.  National Debt Relied does not have a Registered Agent and may be served through the Secretary of State.

12.  The Law Offices of Robert S. Gitmeid & Associates, PLLC is a "Debt Relief Agency" as defined by 11 U.S.C. §101 (12A) as it provides bankruptcy assistance to assisted persons in return for the payment of money or other valuable consideration.

13.  Robert S. Gitmeid is a "Debt Relief Agency" as defined by 11 U.S.C. §101 (12A) as he provides bankruptcy assistance to assisted persons in return for the payment of money or other valuable consideration.

14.  Richard Boehms is an attorney with Gitmeid and Associates.  He was the "local member attorney" assigned to the Thompson's debt relief case. He is a resident of Tennessee and, pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure, may be served at his usual place of business 103 W Main St., Hohenwald, TN 38462-1437.

## FACTS

15.  Prior to filing for bankruptcy, the Thompsons were struggling financially.

16.  In search for relief, the Thompsons approached National Debt Relief, LLC via their website, which required the Thompsons to input their information for a "free debt relief quote."

17.   National Debt Relief's website promotes debt settlement through their company or their affiliates and expressly advises against other options such as bankruptcy and debt consolidation.

18.   A statement from National Debt Relief's website, www.nationaldebtrelief.com, includes the following statement regarding bankruptcy:

> "Mulling Bankruptcy? Mull the Consequences. Declaring bankruptcy is advisable only as a last resort. While Chapter 13 bankruptcy can dramatically reduce your unsecured debt load, it can have plenty of undesirable consequences. Meanwhile, declaring Chapter 7 bankruptcy may mean saying goodbye to most of the assets that you've accumulated over the course of your life."

19.   National Debt Relief's website offers other information and advice regarding bankruptcy.

20.   National Debt Relief provided bankruptcy assistance to the Thompsons when it provided information to the Thompsons with the express or implied purpose of advising the Thompsons whether or not to file bankruptcy.

21.   National Debt Relief is a Debt Relief Agency as that term is defined by 11 U.S.C. §101.

22.   National Debt Relief did not provide the disclosures required by 11 U.S.C. §527 to the Thompsons.

23.   Soon after inputting their information in the National Debt Relief website, the Thompsons were contacted by a representative from National Debt Relief and subsequently the Thompsons' case was referred to the Robert S. Gitmeid and Associates for further handling.

24.   Robert S. Gitmeid & Associates purported to provide legal services and debt management services to the Thompsons. A copy of the Client Retainer Package received by the Thompsons from the Defendants is attached hereto as Exhibit "A".

25. Robert S. Gitmeid and Associates provided bankruptcy assistance to the Thompsons when it provided information to the Thompsons with the express or implied purpose of advising the Thompsons whether or not to file bankruptcy.

26. If Robert S. Gitmeid and Associates asserts that it did not provide bankruptcy assistance to the Thompsons, then it failed in its duties as attorneys to provide competent legal counsel.

27. Robert S. Gitmeid and Associates did not provide the disclosures required by 11 U.S.C. §527 to the Thompsons.

28. Robert S. Gitmeid and Associates assigned Richard Boehmns as the local member attorney assigned to represent the Thompsons.

29. The Thompsons will testify that they could not remember ever speaking with Richard Boehms about their case and that he had no involvement in their case that they were aware of.

30. The Contract provided by Robert S. Gitmeid and Associates did not conform to the requirements of 11 U.S.C. §528 because it does not explain clearly and conspicuously the services provided to the Thompsons and the fees or charges for such services.

31. As part of the debt management program, the Thompsons used a "special purpose account" created and maintained by Global. See Exhibit "A".

32. This special purpose account is integral to the program offered by Robert S. Gitmeid & Associates and Robert S. Gitmeid.

33. Robert S. Gitmeid & Associates and Robert S. Gitmeid offered the Thompsons only one option for account maintenance and payment processing services. That option was Global.

34. As directed by Robert S. Gitmeid & Associates and Robert S. Gitmeid, the Thompsons stopped paying their debts and ceased communicating with their creditors.

35. In the Client Retainer Agreement provided to Robert S. Gitmeid and Associates, the Thompsons disclosed a monthly income of $4,040.00.

36. The Thompsons enrolled debts of $36,286.00 into the debt management program. See Exhibit "A", p.10.

37. The Thompsons, although reporting a monthly income of $4,040.00, incurred monthly expenses of $3,452.00, bringing their monthly available cash funds to $588.00.

38. The Thompsons made monthly payments of $582.00 to the Defendants for approximately one-and-a-half years.

39. After taking into consideration the monthly payments of $582.00 to the Defendants, a mere $6.00 remained of the Thompsons' disposable monthly income.

40. The Thompsons made their payments to the Defendants each month and expected the Defendants to deliver on their promises. The Thompsons believed the Defendants would deliver the debt savings of $10,070.69. See Exhibit "A".

41. The retainer states that Robert S. Gitmeid & Associates is "a law firm with member attorneys who are licensed in your state of residence." *Id.* at 3.

42. According to page 2 of the Client Retainer, a "Legal Fee" would be debited from the Thompsons' special purpose account with Global. *Id.* at 4.

43. Global established and maintained a special purpose account for the Thompsons which is essential to the Defendants' debt management program. The special purpose account secured payments from the Thompsons to fund the debt management program.

44. Global will likely claim that it operates independently from the DMSPs like Robert S. Gitmeid and Associates, Robert S. Gitmeid, Moore Legal Center, P.C., U.S. Legal Group, P.C., John Windsor, Legal Helpers Debt Resolution, LLC, etc. Global will likely point to

its special purpose account agreement as proof of its relationship with the DMSPs. However, Global and the DMSPs are partners in this debt settlement scheme.[1]

45. Global has worked with over 800 DMSPs to provide debt management services to more than 236,000 consumers nationally. *Consumer Financial Protection Bureau v. Global Client Solutions, LLC et al, 2:14-cv-663 (C.D. of CA)*[2]

46. Global, as well as Robert S. Gitmeid and Associates, uses marketing companies like National Debt Relief to funnel consumers into their debt management programs.

47. Global provides/provided account maintenance and payment-processing services to DMSPs like Moore Legal Center, P.C., Robert Gitmeid and Associates, PLLC, U.S. Legal Group, P.C., Legal Helpers Debt Resolution, LLC, and Consumer Capital Advocates, LLC.

48. In exchange for "services" under the debt management programs, Mississippi consumers make payments each month to Global.

49. The monthly payments made by Mississippi consumers cover three things: (1) the DMSP's fee for debt management services; (2) Global's fee for account-maintenance services; and (3) the consumers' savings, which are supposedly set aside for future settlements of the consumers' debts, as negotiated by the DMSPs.

50. Global's "special purpose accounts" are an integral part of the debt management program. In fact, the special purpose accounts are devices required by DMSPs in their contracts with Mississippi consumers.

---

[1] Other known Mississippi consumers are: James and Darlene Imler (17-51173-KMS); Felicia Serpas (15-51547-KMS); Jean Tero; Jennifer Breland; Antoinette K. Francis-Whearry (16-51206-KMS); Peggy Blackmon; Curtis & Patricia Hollimon (11-51104-KMS); Patricia Lawrence, Patricia Passman, and Robert Gibson.
[2] Compl. ¶ 14.

51.   Structurally, special purpose accounts are sub-accounts managed by Global, which reflect the beneficial interest of the individual consumer participating in a debt management program.

52.   The program works as follows:

    a.   Consumers sign a retainer agreement with DMSPs wherein consumers are required to use Global's services to enroll into the program;

    b.   Consumers sign a separate, but related agreement with Global which, among other things, acknowledges that Global's special purpose account is facilitating the debt settlement program; and

    c.   Monthly payments are collected by Global.  The payments are used by Global, the DMSPs and the consumers' creditors.

53.   Global financially benefits from the creation of the special purpose accounts as it charges Mississippians fees and charges, beyond those already charged by the DMSPs.  Those fees include:

| | | |
|---|---|---|
| a. | Account Setup (one-time fee) | $9.00 |
| b. | Monthly Service Charge | $9.85 |
| c. | Incoming Wire Transfer | $10.00 |
| d. | Outgoing Wire Transfer | $15.00 |
| e. | 2nd Day Delivery | $10.00 |
| f. | Overnight Delivery | $20.00 |
| g. | Phone Payment | $1.50 |
| h. | Stop Payment Order | $17.50 |

54.   The special purpose accounts also benefit the DMSPs.  First, the special purpose accounts secure monthly payments from consumers for purposes of paying excessive upfront debt management fees. Second, the special purpose accounts serve as an artifice for evading the Mississippi Debt Management Services Act governing debt management fees under the pretense that the DMSPs did not receive the consumers' debt management payments.

55. In the unlikely event that heavily-indebted Mississippians financially survive the DMSPs' excessive upfront fees, the special purpose accounts are supposed to accumulate funds from which the DMSPs attempt negotiations with the consumers' creditors.

56. At the time Global transmits fees, it knows, based on its own account records, that it has not yet transmitted any funds from a particular consumer's special purpose account to a creditor. Global thus knows that it is transmitting fees to DMSPs that have not yet settled the consumers' debts, and the DMSPs are not entitled to a fee.

57. At the most basic level, the Defendants' debt management program simply does not work. The amount of consumers that successfully complete such programs is estimated to be less than ten percent.[3] However, despite this extremely high failure rate, the Defendants continue to market their services and promote the concept of debt management to vulnerable Mississippians as a viable debt resolution option.

58. In addition, the predatory nature of the Defendants' fees are such that consumers' monthly payments are consumed by the costs of the debt settlement programs during the first several months of the program, and are substantially consumed by such fees throughout the remainder of their participation in the program.

59. Faced with the glaring and pervasive predatory fee practices of the for-profit debt management industry, many states, including Mississippi, have adopted statutes prohibiting predatory fees and other abusive debt management practices.[4]

60. The Defendants' predatory business scheme—to financially enrich themselves and scam already indebted Mississippians—violates Mississippi law.

---

[3] *Debt Settlement: Fraudulent, Abusive, and Deceptive Practices Pose Risk to Consumers*, GAO-10-593T (April 22, 2010) (available online at http://www.gao.gov/assets/130/124498.pdf ).
[4] *See* MISS. CODE ANN. §§ 81-22-1 *et seq*.

61. With full knowledge of their deceptive and abusive business practices, the Defendants have continued to siphon money away from hard-working Mississippians by promising them debt relief that will never come.

62. The Defendants led the Thompsons to believe that the debt management program was their best option.

63. The Defendants failed to perform the services promised.

64. In the year-and-a-half that the Thompsons were enrolled in the debt relief program, only two accounts were settled while the majority of remaining debts accumulated late fees and interest.

65. Gitmeid and Associates and Robert S. Gitmeid failed to provide competent legal advice to the Thompsons.

66. As a result of the Defendants' actions, the Thompsons filed for chapter 7 bankruptcy on June 7, 2017.

67. On their bankruptcy schedules, the Thompsons listed $56,026.00 of unsecured debt – most of which were "enrolled" in the Debt Relief Settlement Program entered into by the Thompsons and Gitmeid and Associates.  See, In re Thompson 17-51113-kms, Dkt. 11, p. 21 and Exhibit A, p.10.

## <u>COUNT ONE</u>
### (<u>Turnover of Estate Property</u>)

68. The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69. Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. §

541(a)(1).  Section 542 of the Bankruptcy Code gives Trustee the power to seek turnover of all property of the Thompsons' estate.

70.     Prior to filing their petition with the Bankruptcy Court, the Thompsons hired the Defendants to provide certain services related to their debts.

71.     The Thompsons paid fees and expenses to Defendants in exchange for certain debt management and legal services.  The Thompsons paid thousands of dollars into the debt management program.

72.     Defendants have collected fees from the Thompsons but have not adequately provided the promised services.

73.     Upon information and belief, the Defendants have engaged in a pattern and practice of violating 11 U.S.C. § 329 and their fiduciary duties.  Therefore, pursuant to 11 U.S.C. § 542(e), the Trustee respectfully requests that Defendants be required to turn over the following: any and all records (whether stored in electronic or hard copy format) related to any and all aspects of the bankruptcy and debt management programs, including but not limited to, any and all records related to any and all individuals in Mississippi for whom the Defendants performed or agreed to perform any aspect of debt management programs.

## COUNT TWO
### (Fraudulent Transfers)

74.     The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75.     Within two years of the filing of their petition for bankruptcy, the Thompsons transferred substantial sums of their money to or for the benefit of Defendants (hereinafter "Transfers").

76. The Thompsons received less than a reasonable equivalent value in exchange for such Transfers.

77. The Thompsons paid the Defendants $582.00 per month for approximately one-and-a-half years and while the Defendants managed to settle two of their accounts, the majority of the Thompsons debt grew, forcing the Thompsons to file for Chapter 7 relief.

78. The Thompsons were insolvent on the date that such Transfers were made, became insolvent as a result of such Transfers, and/or had unreasonable small capital in relation to their business or their transaction at the time or as a result of the Transfers.  See Exhibit "A".

79. Because of the foregoing, the Trustee may avoid the fraudulent transfers under 11 U.S.C. §§ 544 and 548.

80. Because of the foregoing, the Trustee may recover the transfers for the estate under 11 U.S.C. § 550.

## COUNT THREE
### (Accounting)

81. The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

82. Section 542 of the Bankruptcy Code gives the Trustee the power to seek an accounting of Estate property.

83. Upon information and belief, the Defendants have engaged in a pattern and practice of violating 11 U.S.C. § 329 and their fiduciary duties.  The precise amount of money due from the Defendants to the Thompsons is unknown and cannot be ascertained without: (1) knowing the amount of money that they collected in fees for services that were not performed and/or not adequately performed; (2) knowing the amount of money distributed

from the Thompson's's trust account; and (3) acquiring any and all records (whether stored in electronic or hard copy format) relating to any and all aspects of the bankruptcy and debt management programs, including, but not limited to, any and all records relating to any and all individuals in Mississippi for whom Defendants performed or agreed to perform any aspect of debt management program.

## COUNT FOUR
### (Violations of Laws Governing Debt Relief Agencies)

84.   The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

85.   The Thompsons were and are "Assisted Persons" as that term is defined by 11 U.S.C. §101(3) as their debts are primarily consumer debts and the total value of their nonexempt property is less than $192,450.00.

86.   The Law Offices of Robert S. Gitmeid & Associates, PLLC is a "Debt Relief Agency" as defined by 11 U.S.C. §101 (12A) as it provides bankruptcy assistance to assisted persons in return for the payment of money or other valuable consideration.

87.   Robert S. Gitmeid is a "Debt Relief Agency" as defined by 11 U.S.C. §101 (12A) as he provides bankruptcy assistance to assisted persons in return for the payment of money or other valuable consideration.

88.   The Client Retainer Package attached as "Exhibit A" discloses that Robert S. Gitmeid and Associates identifies itself as a Debt Relief Agency under the bankruptcy code. (page 14).

89.   A disclaimer from the Robert S. Gitmeid and Asssociates website disclaims that it purports to be a Debt Relief Agency under the bankruptcy code.

90.   Robert S. Gitmeid and Robert S. Gitmeid and Associates provided bankruptcy assistance to the Thompsons by advising the Thompson's not to file bankruptcy.

91.    Robert S. Gitmeid and Robert S. Gitmeid and Associates violated 11 U.S.C. §527 by failing to provide the Thompsons with the written notice required under 11 U.S.C. §342(b)(1).

92.    Robert S. Gitmeid and Robert S. Gitmeid and Associates violated 11 U.S.C. §527 by failing to provide the Thompsons with the statements disclosed in 11 U.S.C. §527.

93.    The Contract provided by Robert S. Gitmeid and Associates did not conform to the requirements of 11 U.S.C. §528 because it does not explain clearly and conspicuously the services provided to the Thompsons and the fees or charges for such services.

94.    Under 11 U.S.C. §526(c)(1), the Client Retainer Agreement with Robert S. Gitmeid and Associates is void for failure to comply with 11 U.S.C. §§527 and 528.

95.    Under 11 U.S.C. §526(c)(2)(A) and §526(c)(2)(C), Robert S. Gitmeid and Robert S. Gitmeid and Associates shall be liable to the Plaintiff for the return of all fees and expenses paid on behalf of the Thompsons, for actual damages, and for reasonable attorneys' fees and costs.

96.    National Debt Relief's website promotes debt settlement through their company or their affiliates and expressly advises against other options such as bankruptcy and debt consolidation.

97.    A statement from National Debt Relief's website, www.nationaldebtrelief.com, includes the following statement regarding bankruptcy:

> "Mulling Bankruptcy? Mull the Consequences. Declaring bankruptcy is advisable only as a last resort. While Chapter 13 bankruptcy can dramatically reduce your unsecured debt load, it can have plenty of undesirable consequences. Meanwhile, declaring Chapter 7 bankruptcy may mean saying goodbye to most of the assets that you've accumulated over the course of your life."[5]

98.    National Debt Relief's website offers other information and advice regarding bankruptcy.

---

[5] NATIONAL DEBT RELIEF, https://www.nationaldebtrelief.com/ (last visited Sep. 27, 2017)

99.  National Debt Relief provided bankruptcy assistance to the Thompsons when it provided information to the Thompsons with the express or implied purpose of advising the Thompsons whether or not to file bankruptcy.

100.  National Debt Relief is a Debt Relief Agency as that term is defined by 11 U.S.C. §101 (12A) as it provides bankruptcy assistance to assisted persons in return for the payment of money or other valuable consideration.

101.  National Debt Relief did not provide the disclosures required by 11 U.S.C. §527 to the Thompsons.

102.  National Debt Relief used advertisements that failed to comply with 11 U.S.C. §528 by identifying itself as a Debt Relief Agency and explaining clearly and conspicuously the services rendered and the fees charged by National Debt Relief.

103.  Under 11 U.S.C. §526(c)(2)(A) and §526(c)(2)(C), National Debt Relief should be liable to the Plaintiff for the return of all fees and expenses paid on behalf of the Thompsons, for actual damages, and for reasonable attorneys' fees and costs.

## COUNT FIVE
### (Breach of Fiduciary Duties)

104.  The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

105.  Robert S. Gitmeid & Associates and Robert Gitmeid stood in a fiduciary relationship to the Thompsons.

106.  Robert S. Gitmeid & Associates and Robert Gitmeid had a fiduciary duty to act for the benefit of the Thompsons on all matters within the scope of their respective relationships.

107.   Robert S. Gitmeid & Associates and Robert Gitmeid owed the Thompsons the utmost duty of good faith and fair dealing and a duty to put the interests of the Thompsons before their own interests.

108.   Robert S. Gitmeid & Associates and Robert Gitmeid were under a duty to exercise a high standard of care in managing the Thompsons' financial affairs.

109.   Robert S. Gitmeid & Associates and Robert Gitmeid assumed control and responsibility over the Thompsons' affairs within the context of their relationships.

110.   Instead, Robert S. Gitmeid & Associates and Robert Gitmeid placed a married couple faced with financial difficulties into a debt management program they knew would not work.

111.   Robert S. Gitmeid & Associates and Robert Gitmeid breached their duties to the Thompsons by failing to competently and diligently provide services to the Thompsons.

112.   Robert S. Gitmeid & Associates and Robert Gitmeid breached their duties to the Thompsons by failing to supervise the services promised to the Thompsons.

113.   Robert S. Gitmeid & Associates and Robert Gitmeid breached their duties to the Thompsons by charging unreasonable fees.

114.   Robert S. Gitmeid & Associates and Robert Gitmeid breached their duties to the Thompsons by failing to provide complete advice regarding the filing of bankruptcy.

115.   Robert S. Gitmeid & Associates and Robert Gitmeid breached their duties to the Thompsons by placing their own financial interests above the interests of the Thompsons.

116.   Robert S. Gitmeid & Associates and Robert Gitmeid breached their duties to the Thompsons by sharing fees with non-lawyers.

117.    Robert S. Gitmeid & Associates and Robert Gitmeid failed to conduct a feasibility analysis to determine whether the Thompsons were good candidates for the Defendants' debt management program.

118.    The Defendants did not provide the Thompsons with a licensed attorney engaged in the practice of law in Mississippi to provide "debt management service" as defined by Miss. Code Ann. § 81-22-3.

119.    Robert S. Gitmeid & Associates is not licensed to practice law in Mississippi and was therefore engaged in the unauthorized practice of law.

120.    Robert S. Gitmeid is not licensed to practice law in Mississippi and was therefore engaged in the unauthorized practice of law.

121.    Richard Boehms, the attorney allegedly assigned by Robert S. Gitmeid to service the Thompsons' debt management program, was not engaged in the practice of law in Mississippi.

122.    The Thompsons will testify that they never spoke to Richard Boehms or any Mississippi-licensed attorney affiliated with Robert S. Gitmeid and Associates.

123.    Richard Boehms breached his fiduciary duties with the Thompsons by failing to communicate with the Thompsons and by failing to provide competent legal counsel to his clients.

124.    During the course of his representation of the Thompsons, Richard Boehms violated Rules 1.2, 1.3, 1.4, 1.5, 1.8, 1.15, 1.16, 2.1, 5.5, 7.1, 7.2, and 8.4 of the Mississippi Rules of Professional Conduct.

125.    These attorneys' breach of fiduciary duties proximately caused harm to the Thompsons.

## COUNT SIX
### (Violations of the Mississippi Debt Management Services Act)

126.   Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

127.   Global has an established pattern and practice of violating debt management statutes in other states. *See i.e., Carlsen v. Global Client Solutions, LLC*, 256 P.3d 322 (Wash. 2011) (finding Global to have to have taken "possession and delivery of funds by accepting them into a custodial account").

128.   The Mississippi Debt Management Services Act was designed to protect Mississippi consumers from unscrupulous debt management service providers like the Defendants.

129.   The Defendants are a "debt management service provider" as defined by Miss. Code Ann. § 81-22-3 and are engaged in debt management services in the state of Mississippi.

130.   In exchange for a fee, the Defendants:

   a.   receive money from consumers for the purpose of distributing one or more payments to or among one or more creditors of consumers in full or partial payment of the consumers' obligations;

   b.   arrange or assist consumers to arrange for the distribution of one or more payments to or among one or more creditors of consumers in full or partial payment of the consumers' obligations;

   c.   exercise control, directly or indirectly, or arranging for the exercise of control over funds of consumers for the purpose of distributing payments to or among one or more creditors of consumers; and

   d.   act or offer to act as an intermediary between consumers and one or more creditors of consumers for the purpose of adjusting, compromising, negotiating, settling, discharging or otherwise deferring, reducing or altering the terms of payment of the consumers' obligations.

131.   The Defendants' acts against Mississippi consumers were unfair, unconscionable and deceptive, and were violations of Miss. Code Ann. § 81-22-23(1).

132.   Global knowingly and substantially assisted the DMSPs by, among other things:

a. Offering to serve and serving as a custodian of Mississippians' debt management payments secured through illegal contracts;

b. Offering to serve and serving as custodian of Mississippians' payments for purposes of paying illegal fees;

c. Establishing, maintaining, and managing special purpose accounts as an artifice to evade state regulations governing the debt management industry, including Miss. Code Ann. § 81-22-3(b);

d. Representing debt management services to Mississippians as a viable option;

e. Taking fees from Mississippians before actual services are performed;

f. Taking fees from Mississippians under the guise of providing legal services;

g. Misrepresenting the true relationship between Global and the DMSPs; and

h. Misrepresenting the services to be provided to Mississippi consumers.

133. The Defendants' fees are in excess of the amounts allowed by Miss. Code § 81-22-13.

134. The Defendants failed to comply with the disclosure requirements of Miss. Code Ann. § 81-22-11 and failed to properly handle consumer funds as mandated by Miss. Code Ann. § 81-22-9.

135. The Defendants did not register with Mississippi Department of Banking and Consumer Finance or secure a bond in violation of Miss. Code Ann. §§ 81-22-5 and 81-22-7.

136. The Defendants engaged in false advertising in violation of Miss. Code Ann. § 81-22-21.

**WHEREFORE**, the Trustee, having set forth her claims for relief against Defendants, respectfully prays of the Court as follows:

A. That this Court order Defendants to turn over: any and all records (whether stored in electronic or hard-copy format) related to any and all aspects of the Thompsons' debt management program, as well as any and all records related to any and all individuals in Mississippi for whom Defendants performed or agreed to perform any aspect of the debt management program;

B. That this Court enter a judgment against Defendants avoiding the transfers of the Thompsons' assets to Defendants and granting such sums as may be assessed by the

Court, including but not limited to, the value of the transfers, attorneys' fees, as well as any further relief as may be just and proper;

C. That this Court order Defendants to account for the precise amount of money due from Defendants to the Thompsons;

D. That this Court order Defendants to pay actual damages as well as attorney fees in a sum to be determined by the Court;

E. That this Court order Defendants to pay punitive damages in order to deter Defendants from committing these acts in the future; and

F. That the Trustee have such other and further relief as the Court may deem just and proper, including equitable relief.

This the 29th day of September, 2017.

Respectfully submitted,

/s/Patrick A. Sheehan
PATRICK A, SHEEHAN,
Attorney for Trustee, Kimberly R. Lentz
429 Porter Avenue
Ocean Springs, Mississippi 39564
(T): 228-875-0572/ (F): 228-875-0895
MS Bar No. 6747
pat@sheehanlawfirm.com